UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-44-MOC-DSC

| | |
|---|---|
| RACHELLE DAVIS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> AMERICAN AIRLINES, et al., ) <br> ) <br> ) <br> Defendants. ) <br> ) | ORDER |

**THIS MATTER** comes before the Court on a Motion to Dismiss by Defendants American Airlines, Terry Dix, Michelle Magee, and Mark Moscicki, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 9).

**I.**     **BACKGROUND**

**A.**     **Procedural Background**

Pro se Plaintiff Rachelle Davis is employed with Defendant American Airlines (hereinafter "American Airlines" or "the Company") as a flight attendant. A collective bargaining agreement ("CBA") between American Airlines and Plaintiff's union governs many of the terms and conditions of Plaintiff's employment. American Airlines sent Plaintiff for an independent medical examination pursuant to the CBA after Plaintiff reported that she was being surveilled and subjected to "thermography radiation" attacks by unknown individuals, including when she was on duty. An independent psychologist determined that Plaintiff was not fit for duty and the Company placed her on a medical leave of absence.

Plaintiff claims that she is well now and ready to return to work as a flight attendant. She

1

has refused to submit, however, to another independent medical examination to assess her fitness for duty. She asserts that she is entitled under the CBA to return to work without undergoing another independent medical examination, and she claims that American Airlines is refusing to return her to work because of race, age, and disability discrimination and retaliation. Plaintiff filed this action on January 29, 2019, naming as Defendants American Airlines and three individual defendants, and purporting to bring employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

On March 4, 2019, Defendants filed the pending motion to dismiss. Defendants contend that Plaintiff's lawsuit is subject to dismissal for several reasons. First, Defendants argue that Plaintiff's claims constitute a minor dispute under the Railway Labor Act ("RLA"), over which the Court lacks subject matter jurisdiction. Second, Defendants contend that Plaintiff failed to timely exhaust her administrative remedies. Third, Defendants contend that, even if the Court had subject matter jurisdiction and even if Plaintiff timely exhausted her administrative remedies, she fails to state a claim on which relief may be granted. On March 5, 2019, this Court entered an order granting Plaintiff 14 days to respond to the motion to dismiss. (Doc. No. 11). Plaintiff has filed her response, Defendants have filed a Reply, and Plaintiff has filed a Surreply. (Doc. Nos. 12, 16, 18). This action is ripe for disposition.

    **B.    Factual Background**

    **i.    The Governing Collective Bargaining Agreement**

American Airlines employs Plaintiff as a flight attendant based out of the Charlotte International Airport. See (Doc. No. 10-1 at ¶ 2: Decl. of Mark Moscicki, Defs.' Ex. 1). Many

of the terms and conditions of Plaintiff's employment are governed by a CBA between American Airlines and Plaintiff's union, the Association of Professional Flight Attendants. (Id. at ¶ 3; Doc. No. 10-2: Agreement Between American Airlines, Inc. and Association of Professional Flight Attendants – APFA ("APFA CBA"), Defs.' Ex. A). Of particular relevance to Plaintiff's claims, Sections 25 and 28 of the CBA govern medical examinations and flight attendants' return to work after a medical leave of absence. See (APFA CBA at Sections 25, 28).

Sections 30 and 31 of the CBA establish multi-step procedures for the presentation and resolution of grievances arising under the CBA, which culminate in a neutral final and binding arbitration before a System Board of Adjustment. See (APFA CBA at Sections 30-31). Section 28 of the CBA establishes procedures for fitness for duty evaluations. The Company can send a flight attendant for a medical evaluation with a physician of the Company's choosing when reasonable grounds exist to believe the flight attendant's physical or mental health may impair the performance of her duties. See (APFA CBA at Section 28(A)). If the flight attendant disagrees with the physician's fitness for duty determination, she can challenge it by submitting her own physician's opinion. See (APFA CBA at Section 28(C)). If the physician selected by the flight attendant has an opinion that differs from the Company-selected physician's opinion, the disagreeing physicians mutually appoint a third, disinterested health care provider to conduct another examination of the flight attendant, and the third health care provider's opinion on the flight attendant's fitness for duty controls. See (APFA CBA at Section 28(C)(4)-(5)).

Section 25 of the CBA governs flight attendants' return to work from leaves of absence. See (APFA CBA at Section 25). Before returning from a medical leave of absence, a flight attendant must submit a physician's verification that she is fit for duty. See (APFA CBA at Section 25(E)(3)). Disputes between the Company and the flight attendant about the flight

attendant's ability to return to work are to be resolved using the procedures for medical examinations contained in Section 28 of the CBA. See (APFA CBA at Section 25(E)(4), (7)).

### ii. Plaintiff Is Determined Unfit for Duty

In August 2015, Plaintiff told Flight Service Manager Terry Dix that unknown individuals were surveilling her and targeting her with thermography radiation attacks. See (Doc. No. 10-3 at ¶ 2: Decl. of Terry Dix, attached as Defs.' Ex. 2). Plaintiff claimed that the radiation attacks had been ongoing for approximately eighteen months and expressed concern that her coworkers might be providing information about her to the military. (Id.). Plaintiff told Dix that she did not stay at Company-provided hotels during layovers because she was unable to escape the radiation that the military would shoot at her through the air conditioning vents and windows. (Id. at ¶ 3). Rather, Plaintiff spent the nights in airports during layovers where she could move around easier and avoid the radiation attacks. (Id.). Plaintiff told Dix that the attacks could happen anywhere, at any time, including during flights when Plaintiff was working as a flight attendant. (Id. at ¶ 4). Plaintiff also showed Dix a shield that she wore on her torso and in her undergarments to block radiation attacks. (Id. at ¶ 5).

Pursuant to Section 28 of the CBA, American Airlines sent Plaintiff for an evaluation with a psychologist, Dr. Alejandro Arias. See (Doc. No. 10-1 at ¶ 4: Moscicki Decl.). Dr. Arias examined Plaintiff on September 16, 2015, and determined that she was not fit for duty and required treatment by a mental health specialist. See (Doc. No. 1 at 15: Arias Fitness for Duty Evaluation). The Company thereafter placed Plaintiff on a medical leave of absence. See (Doc. No. 1 at 16: 9/29/15 Ltr. From T. Dix to R. Davis; Doc. No. 10-1 at ¶ 5).

On May 17, 2017, Plaintiff informed American Airlines that she was ready to return to work. See (Doc. No. 1 at 23: 5/17/17 Ltr. from R. Davis to American Airlines; Doc. No. 10-1 at

4

¶ 6). On June 29, 2017, American Airlines informed Plaintiff that it would only return her to work if Dr. Arias determined that she was fit for duty. See (Doc. No. 1 at 24: 6/29/17 Ltr. from T. Dix to R. Davis). On August 14, 2018, American Airlines reiterated to Plaintiff that under Sections 25 and 28 of the CBA the Company would not return her to work unless Dr. Arias examined her again and determined that she was fit for duty. See (Doc. No. 1 at 25-27: 8/14/18 Ltr. from M. Moscicki to R. Davis). The Company also reminded Plaintiff that if Dr. Arias determined that she was still unfit for duty and she disagreed with his assessment, Section 28(C) of the CBA provided a process for her to challenge his determination. (Id.). Plaintiff, however, has declined to undergo another examination with Dr. Arias. See (Doc. No. 10-1 at ¶ 8).

### iii. Plaintiff's Charge of Discrimination and Allegations of Discrimination

On March 26, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, complaining that American Airlines would not return her to work because of race, age, and disability discrimination and retaliation. See (Doc. No. 10-4: Charge of Discrimination, attached as Ex. 3). In this lawsuit, Plaintiff alleges that American Airlines discriminated against her by accepting a "falsified medical document," which is presumably Dr. Arias' September 2015 determination that Plaintiff was not fit for duty. See (Doc. No. 1 at 4, 8-10). In addition, Plaintiff alleges that American Airlines discriminated against her by not returning her to duty. (Id.). Plaintiff contends that American is trying to force her into "early retirement because of race, age, disability and retaliation." (Id. at 10).

## II. STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only that power authorized by Constitution and statute." Randall v. United States, 95 F.3d 339, 344 (4th Cir. 1996). "Thus,

when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." Vuyyuru, 555 F.3d at 347. The existence of federal subject matter jurisdiction is a threshold issue, Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999), and a challenge to the court's subject matter jurisdiction is properly considered on a motion under FED. R. CIV. P. 12(b)(1). Clinton v. Brown, No. 3:15cv48, 2015 WL 4941799, at *2 (W.D.N.C. Aug. 19, 2015).

The burden of establishing federal subject matter jurisdiction rests on the plaintiff. Id. The moving party should prevail on a motion to dismiss pursuant to a lack of federal jurisdiction if material jurisdictional facts are not in dispute, and the moving party is entitled to prevail as a matter of law. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Moreover, on a factual challenge to the court's subject matter jurisdiction, the Court is not limited to the four corners of the Complaint and is free to weigh evidence and determine its power to hear the case. See Schneider v. Donaldson Funeral Home, P.A., 733 F. App'x 641, 644 (4th Cir. 2018); In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333-34 (4th Cir. 2014) ("[W]hen a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to

6

state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted). While the Court may construe Plaintiff's complaint liberally because she is a pro se plaintiff, the complaint must still allege "'facts sufficient to state all the elements of [her] claim'" to survive a motion to dismiss. Williams v. Wal-Mart Stores East, L.P., No. 5:18-CV-33-BO, 2018 WL 3341181, at *2 (E.D.N.C. July 6, 2018) (quoting Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)).

### III. DISCUSSION

#### A. RLA Preemption

Defendants first contend in their motion to dismiss that Plaintiff's employment discrimination claims are preempted by the RLA. For the following reasons, the Court agrees. Because American Airlines is a passenger air carrier, the RLA governs its labor practices. See 45 U.S.C. § 181. Congress passed the RLA to promote stability in the transportation industry by providing a comprehensive and exclusive framework for resolving labor disputes. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). To realize this goal, Congress established a mandatory arbitration mechanism to ensure the "prompt and orderly settlement" of labor disputes. Id. (quoting 45 U.S.C. § 151(a)); see also Union Pac. R.R. v. Sheehan, 439 U.S. 89, 94 (1978); Air Line Pilots Ass'n Int'l v. U.S. Airways Grp., Inc., 609 F.3d 338, 341 (4th Cir. 2010)

7

("[Policy favoring arbitration] has special importance in the rail and air industries, where failure to resolve labor disputes in a prompt and orderly manner may interrupt commerce and thus adversely affect the public interest in traveling and shipping.") (internal edits, quotation marks, and citations omitted). Congress deemed it essential to the maintenance of labor peace to keep certain disputes within the dispute resolution framework of the RLA "and out of the courts." Sheehan, 439 U.S. at 94.

Courts addressing issues of RLA preclusion divide labor disputes into two categories: "major disputes" and "minor disputes." See Hawaiian Airlines, 512 U.S. at 252. The terms "major" and "minor" have nothing to do with the importance of the issue to the disputants. "Major disputes" involve the formation of collective bargaining agreements. Id. "Minor disputes" are disputes arising from the interpretation or application of a collective bargaining agreement. Id. at 252-53. In other words, "major disputes seek to create contractual rights, minor disputes to enforce them." Id. at 253. Minor disputes "must be resolved only through the RLA mechanisms, including the internal dispute-resolution processes and an adjustment board established by the employer and the union[]." Hawaiian Airlines, 512 U.S. at 253 (citing 45 U.S.C. § 184); see also Williams v. Air Wisconsin, Inc., 874 F. Supp. 710, 715 (E.D. Va. 1995) ("The RLA vests in the System Board of Adjustment exclusive jurisdiction over 'minor' disputes such as breach of collective bargaining agreements."), aff'd, 74 F.3d 1235 (4th Cir. 1996). Thus, the adjustment boards mandated by the RLA have mandatory, exclusive, and comprehensive jurisdiction over disputes arising from the interpretation or application of collective bargaining agreements in the airline industry. See Hawaiian Airlines, 512 U.S. at 252-53.

If a plaintiff's claims require the interpretation or application of a collective bargaining agreement, the claims are preempted by the RLA regardless of whether the legal basis for the

claims arise from a source other than the collective bargaining agreement. See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 304 (1989); Lee v. Norfolk S. Ry. Co., 912 F. Supp. 2d 375, 380 (W.D.N.C. 2012) (Section 1981 race discrimination claim preempted by RLA where plaintiff alleged that defendant employer breached a collective bargaining agreement with discriminatory intent because resolution would require interpretation of agreement); Caldwell v. Norfolk S. Corp., No. 96CV443P, 1998 WL 1978291, at *3 (W.D.N.C. Mar. 3, 1998) (Title VII claim preempted by RLA where plaintiff alleged defendant discriminated against him by not awarding a position to which he was entitled under the governing collective bargaining agreement); see also Emswiler v. CSX Transp., Inc., 691 F.3d 782, 792-93 (6th Cir. 2012) (disability discrimination claim preempted by RLA where plaintiff sought adjustment of his seniority date, which would have required the interpretation of the collective bargaining agreement); Brown v. Illinois Cent. R.R. Co., 254 F.3d 654, 660-61 (7th Cir. 2001) (disability discrimination claim preempted where resolution of accommodation issue depended on interpretation of collective bargaining agreement); Gore v. Trans World Airlines, 210 F.3d 944, 948-52 (8th Cir. 2000) (state law tort claims preempted by RLA where defendant's legal justification for actions could not be determined without interpreting collective bargaining agreement).

  Plaintiff's claims present a minor dispute under the RLA. She asserts that American Airlines should return her to work without requiring her to submit to another medical examination by Dr. Arias. The procedure for a flight attendant to return to work after a medical leave of absence, the Company's right to require a fitness for duty evaluation, and the process for a flight attendant to challenge a determination that she is not fit for duty are all governed by Sections 25 and 28 of the CBA. Thus, it would be impossible for the Court to resolve Plaintiff's

claims without interpreting and applying the CBA.

Plaintiff's claims are analogous to those presented in Caldwell, where the governing collective bargaining agreement regulated the process whereby positions were awarded at the defendant employer. 1998 WL 1978291, at *1. The plaintiff contended that the employer violated the collective bargaining agreement by awarding a position to another candidate and alleged that the employer did so with racially discriminatory intent in violation of Title VII. Id. at *4. The Court concluded that the Title VII claim was a minor dispute preempted by the RLA because to assess the discrimination claim it would have to determine the criteria the defendant was required to use in awarding the position, which would require an interpretation of the CBA. Id. at *5. Similarly, for this Court to assess Plaintiff's claim that American Airlines is violating the CBA with discriminatory intent by requiring her to undergo another fitness for duty examination before returning her to work the Court would have to assess the terms of the CBA governing the Company's right to require the fitness for duty evaluation and Plaintiff's alleged right to return to work without one. Accordingly, Plaintiff's claims constitute a minor dispute over which the Court lacks subject matter jurisdiction.

### B. Plaintiff's Failure to Timely Exhaust Her Administrative Remedies

Defendants next contend that even if Plaintiff's claims were not preempted by the RLA, they would still be subject to dismissal because Plaintiff failed to timely exhaust her administrative remedies. The Court agrees. Before filing suit under Title VII, the ADEA, or the ADA, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); 42 U.S.C. § 12117 (ADA). To be timely, a charge of discrimination must be filed within 180 days after the unlawful employment practice occurs. See Davis v. Weiser Sec.

Servs., Inc., No. 3:13-CV-00522-MOC-DSC, 2016 WL 818913, at *3 (W.D.N.C. Feb. 3, 2016) (dismissing Title VII lawsuit where plaintiff filed charge 226 days after last act of alleged discrimination); Mobley v. AAA Cooper Transp., No. 14-CV-136, 2015 WL 790339, at *7 (M.D.N.C. Feb. 25, 2015) ("Under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory activity."); Kargarian v. AutoZoners, LLC, No. 3:12-CV-144-MOC-DSC, 2012 WL 4753301, at *4-5 (W.D.N.C. Sept. 13, 2012) (dismissing claims as untimely where plaintiff filed charge more than 180 days after last discriminatory act).

Plaintiff filed her Charge of Discrimination on March 26, 2018. To have been timely, the allegedly discriminatory act about which she is complaining must have occurred within the preceding 180 days, or on or after September 27, 2017. All of the acts about which Plaintiff complains, however, occurred well before September 27, 2017. Specifically, Dr. Arias determined that Plaintiff was unfit for duty and American Airlines placed her on a medical leave of absence in September 2015. American Airlines informed Plaintiff on June 29, 2017, that the Company would not return her to work without Dr. Arias' clearance. Accordingly, Plaintiff did not file a timely charge of discrimination. See Howell v. N. Carolina Cent. Univ., No. 1:16CV576, 2017 WL 2861133, at *10 (M.D.N.C. July 5, 2017) ("[T]he filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision[.]") (quoting Price v. Litton Bus. Sys., Inc., 694 F.2d 963, 965 (4th Cir. 1982)); Darnell v. Tyson Foods, Inc., No. 3:11-CV-473-RJC, 2012 WL 6093076, at *3 (W.D.N.C. Dec. 7, 2012), aff'd, 536 F. App'x 366 (4th Cir. 2013) (same); Weston v. Randolph Cty. Cmty. Coll., No. 1:06CV00063, 2007 WL 2746777, at *3 (M.D.N.C. Sept. 18, 2007) (filing period began to run when employer orally informed plaintiff her contract would not be renewed). Because Plaintiff

11

failed to timely exhaust her administrative remedies, her claims are alternatively dismissed for this reason.[1]

### C. Plaintiff's Claims against the Individual Defendants under Title VII, the ADEA, and the ADA

Next, Defendants contend that Plaintiff's claims against the individual Defendants Mosciski, Dix, and Magee must be dismissed because Title VII, the ADEA, and the ADA do not provide for individual liability. The Court agrees. Accordingly, the claims against Mosciski, Dix, and Magee will be dismissed for this additional reason. See Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) ("Title VII, the ADA, and the ADEA . . . do not provide for causes of action against defendants in their individual capacities.").

### IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion to Dismiss, (Doc. No. 9), is **GRANTED**.

2. This action is dismissed.

3. The Clerk is directed to terminate this action.

---

[1] In her response, Plaintiff argues only that that the EEOC dismissed her charge of discrimination on the merits rather than on timeliness grounds. The outcome of the EEOC process, however, has no bearing on the Court's assessment of whether she timely exhausted administrative remedies. See Little v. Hook Tire & Serv., Inc., No. 3:13-CV-00521-FDW, 2014 WL 991967, at *2 (W.D.N.C. Mar. 13, 2014), aff'd, 585 F. App'x 50 (4th Cir. 2014) (plaintiff's charge was untimely, even though "Plaintiff argue[d] the requisite was met because the EEOC vacated the first Notice of Dismissal that noted late filing, and issued a second, effectively interpreting the charge as timely"); Kelley v. Int'l Bhd. of Teamsters, Local Union 71, No. 4:11-CV-1268-RBH-TER, 2013 WL 6826411, at *3 (D.S.C. Nov. 25, 2013) (plaintiff's "argument that his Charge was timely because the Dismissal and Notice of Rights letter he received did not indicate that it was not timely is unavailing"), report and recommendation adopted as modified, No. 4:11-CV-1268-RBH, 2013 WL 6826906 (D.S.C. Dec. 23, 2013).

Signed: June 28, 2019

Max O. Cogburn Jr
United States District Judge